IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RAYMOND STINDE, #R34993,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-cv-01108-SMY |
| | ) |
| **TYSON BROWN, HEATHER HOOD,** | ) |
| **JEFF MARNARTI, DEREK BRANDT,** | ) |
| **DAVID EVELSIZER, MARY ZIMMER,** | ) |
| **DONALD LINDENBERG,** | ) |
| **FRANK LAWRENCE, ANGELA CRAIN,** | ) |
| **MOHAMMED SIDDIQUI,** | ) |
| **and ANTHONY WILLS,**[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

This matter is now before the Court for consideration of two motions for summary judgment for failure to exhaust administrative remedies filed by Defendant Mohammed Siddiqui (Doc. 105) and Defendants Angela Crain, Heather Hood, David Evelsizer, Frank Lawrence, and Donald Lindenberg (Doc. 107). For the following reasons, Defendants Evelsizer, Lawrence, Lindenberg, Crain, and Siddiqui's motions will be **GRANTED**, and Defendant Hood's motion will be **DENIED**.

### BACKGROUND

Plaintiff Raymond Stinde is an inmate in the custody of the Illinois Department of Corrections (IDOC) and filed this lawsuit pursuant to 42 U.S.C. § 1983 while he was incarcerated at Menard Correctional Center. He asserts Eighth Amendment claims against the defendants for

---

[1] The Clerk's Office will be **DIRECTED** to **UPDATE** the docket sheet to reflect the correct spelling of each defendant's name as reflected in the case caption and listed in their Answers, *see* Docs. 63, 64, 75, and 87.

1

their alleged deliberate indifference to his unconstitutional living conditions and chronic joint pain for two months beginning on July 11, 2019.[2]

Plaintiff makes the following allegations in the Second Amended Complaint: Plaintiff transferred from Pinckneyville Correctional Center to Menard Correctional Center following an altercation with another inmate on July 11, 2019. He was punished with two months in segregation.

Plaintiff was housed in a dirty segregation cell equipped with a rusty bedframe and urine-stained mattress without bedding or a mattress protector. He was given no hygiene supplies and no access to cold water. He also had no access to his personal belongings for several weeks. Defendants Brown, Marnarti, Brandt, Hood, Evelsizer, Lindenberg, and Lawrence failed to provide bedding and hygiene items when he asked.

Plaintiff was also denied medication for joint pain associated with lupus after requesting it daily beginning on July 11, 2019. Although Nurse Practitioner Mary Zimmer increased his prescription pain medication to 800 mg of Ibuprofen on August 1, 2019, Defendants Zimmer, Crain, and Siddiqui failed to provide it from July 11, 2019 until October 11, 2019. *Id*.

The Second Amended Complaint (Doc. 44) survived preliminary screening under 28 U.S.C. § 1915A on the following claims (*see* Doc. 45):

> Count 1: Eighth Amendment claim against Brown, Marnarti, Brandt, Hood, Evelsizer, Lindenberg, and Lawrence for subjecting Plaintiff to unconstitutional living conditions in segregation for two months beginning July 11, 2019.
>
> Count 2: Eighth Amendment claim against Zimmer, Crain, and Siddiqui for exhibiting deliberate indifference to Plaintiff's chronic joint pain associated with lupus beginning July 11, 2019.

---

[2] Plaintiff filed a Complaint (Doc. 1) on September 7, 2021, a First Amended Complaint (Doc. 38) on June 28, 2023, and a Second Amended Complaint (Doc. 44) on August 30, 2023. The Second Amended Complaint now controls. *See* Docs. 44-45.

*Id.* In their Answers to the Second Amended Complaint, *see* Docs. 63, 64, 75, and 87, all defendants raised an affirmative defense based on Plaintiff's alleged failure to exhaust his available administrative remedies before bringing this lawsuit. Defendants Brown, Marnarti, Brandt, and Zimmer later withdrew the affirmative defense, *see* Docs. 86 and 94, while Defendants Siddiqui, Hood, Evelsizer, Lindenberg, Lawrence, and Crain moved for summary judgment, *see* Docs. 105 and 107.

## MOTIONS FOR SUMMARY JUDGMENT

Defendants Hood, Evelsizer, Lawrence, and Lindenberg seek summary judgment on Count 1, *see* Doc. 107, and Defendants Siddiqui and Crain seek summary judgment on Count 2, *see* Docs. 105 and 107. Defendants point out that Plaintiff knew how to use the grievance process and did so regularly. Defendant Siddiqui concedes that Plaintiff properly exhausted one grievance for each claim (Doc. 106, ¶¶ 12, 14), and the other defendants do not dispute that he completed each step of the grievance process for those two grievances. They argue however that Plaintiff's grievance about the inadequate living conditions in Count 1 focused on misconduct of lower-level staff for issues that were addressed by the time he wrote the grievance, and his grievance addressing inadequate pain management for his lupus in Count 2 did not properly identify the defendants or describe misconduct by them.

Plaintiff argues his grievances provide timely and sufficient notice of both claims against all defendants based on his general description of them, his description of their misconduct, or their supervisory roles opposes summary judgment. (Docs. 110 and 111).

## FACTS

The following material facts are taken from pleadings, affidavits, depositions, admissions, and answers to interrogatories and are considered undisputed for purposes of the pending motions:

3

Plaintiff filed two grievances that are dipositive of the pending summary judgment motions:[3] Grievance #32-9-19 and Grievance #162-10-19. (Docs. 107-1, ¶ 14; Docs. 110, 111) Grievance #32-9-19 addresses the unconstitutional conditions of confinement at issue in Count 1. (Doc. 107-1, ¶ 12, pp. 170-75). Grievance #162-10-19 addresses the denial of pain medication for joint pain associated with lupus at issue in Count 2. (Doc. 107-1, pp. 133-44). Both grievances are summarized below.

### Grievance 1: #32-9-19 (Count 1)

In Grievance #32-9-19 dated August 26, 2019, Plaintiff complains about his conditions of confinement in a dirty segregation cell beginning July 11, 2019. (Doc. 107-1, pp. 170-75). He states he requested and was denied a bedroll, hygiene bag, and cold water, even after Officers Brandt, Brown, Marnarti, and Held promised to provide these items to him. *Id*. at 173-75. Plaintiff reportedly submitted a written request for grievance forms and money vouchers to Counselor Hood in mid-July 2019, and she indicated that both were available on the gallery. On July 15, 2019, Plaintiff responded by saying that his daily requests for these forms were ignored, and he asked for Hood's help addressing the conditions in his cell, the denial of a bedroll, and the lack of hygiene supplies. *Id*. Hood agreed to inform a lieutenant about the issues, but Plaintiff never heard from Hood again. *Id*.

Plaintiff received some personal property, including soap, toothpaste, and deodorant, from Pinckneyville on July 27, 2019. *Id*. He showered for the first time at Menard on July 28, 2019 (Plaintiff declined a shower because he had no hygiene items, clothing, or towels on July 18 and/or

---

[3] For the first time, in his Amended Motion for Summary Judgment, Defendant Siddiqui identifies a third grievance complaining of inadequate medical care that Siddiqui claims Plaintiff did not pursue beyond the first level of the grievance process: Grievance #154-12-19 (Doc. 106, ¶¶ 11, 13; Doc. 106-1, p. 1). Siddiqui did not identify or discuss this grievance in the original summary judgment motion or seek leave to expand the scope of the summary judgment motion when he amended it pursuant to court order. No other parties address it. Moreover, because this grievance has no bearing on the outcome of the pending motions, the Court will not discuss it in any detail.

19, 2019).  *Id*.  He was then seen by a nurse practitioner for treatment of a rash that he developed from his exposure to these conditions.  *Id*. *See also* Doc. 106, ¶ 14.

Plaintiff sent a letter to the "Sergeant of North 2 (Lindberg), Major (John Doe), and Warden"[4] to report the unconstitutional living conditions on July 31, 2019.  (Doc. 107-1, p. 174). Plaintiff indicates that this letter to Lindenberg, Evelsizer, and Lawrence served to "mak[e] them aware of [his] problems within this grievance."  *Id*.  He states that he did not hear back from them. *Id*.  On August 2, 2019, Officer Held promised to give him a bedroll and hygiene supplies while making rounds, and Lieutenant Snell provided a bedroll on August 4, 2019.  *Id*.  Plaintiff concludes the grievance with a request for implementation of new policies for obtaining grievance forms and money vouchers, a new bed, bedding, shower access, plumbing repairs, and hygiene supplies.  *Id*.

Plaintiff's grievance was marked received on September 20, 2019.  (Doc. 107-1, pp. 171-72). Grievance Officer Jeff Mulholland denied it on September 24, 2019, based on a review of Counselor Hood's investigation into the alleged misconduct of subordinate staff members (Brandt, Brown, Marnarti, and Held) and report finding no complaints from Plaintiff about cell conditions, hygiene items, or plumbing.  *Id*.  Chief Administrative Officer Lawrence concurred with this decision on September 24, 2019.  *Id*.  Plaintiff appealed to the ARB on October 1, 2019.  *Id*.  The ARB denied the appeal three days later noting the grievance was appropriately addressed by the facility administration.  *Id*. at 170.  Debbie Knauer signed the denial for the ARB on October 4, 2019, and Acting IDOC Director Rob Jeffreys concurred the same day.  *Id*.

---

[4] In the Second Amended Complaint, Plaintiff identifies these individuals more specifically as Sergeant Lindenberg, Major Evelsizer, and Warden Lawrence. *See* Doc. 44; Doc. 107-1, p. 174.

5

**Grievance 2: #162-10-19 (Count 2)**

In Grievance #162-10-19 dated October 14, 2019, Plaintiff complains about inadequate medical care for his lupus and related pain. (Doc. 107-1, pp. 133-44). He states he informed Menard's medical staff about his lupus, joint pain, and treatment with pain medication during intake on July 11, 2019. *Id*. at 136. On July 19, 2019, Plaintiff submitted a sick call slip to report that he was still waiting to receive ibuprofen or Motrin (high dosage) and was then seen by "LPN Ms. T." the same day. He rated his pain as a "9" on a scale from "1 to 10" where "10" was the worst pain. He also complained about not being seen by a doctor since arriving at the prison. *Id*. He included two exhibits with his grievance: (1) Outpatient Offender Progress Notes documenting his diagnosis of lupus and treatment with Motrin (600 mg) from July 11, 2019; and (2) Outpatient Progress Notes confirming his diagnosis with lupus and medication adjustment to Ibuprofen (800 mg) and Plaquenil from July 19, 2019. *Id*. at 140.

Plaintiff also states in the grievance that he was scheduled to see a nurse practitioner on July 25, 2019, but his appointment was rescheduled for July 30, 2019. *Id*. at 137. Before that appointment, Plaintiff submitted another nurse sick call slip to report ongoing pain associated with lupus. *Id*. He explains that medical staff denied him treatment after he refused to sign payment paperwork when he was not actually required to pay for treatment of his chronic condition *Id*.

Plaintiff explains that on August 1, 2019, he saw a nurse who prescribed him Motrin (800 mg), *id*. at 137, and he supported this with an Offender Outpatient Progress Report signed by Mary Zimmer on August 1, 2019. *Id*. at 142. Plaintiff did not actually receive this medicine, even after directing 5 sick call slips to healthcare and asking nurses making rounds for his pain medication on a daily basis. The nurses reassured him there was nothing more to do because the medicine was already ordered. *Id*. at 137.

Plaintiff asserts he did not receive any pain medication until early October 2019, when Nurse Reba gave him Ibuprofen (200 mg). *Id.* She also re-referred him to the nurse practitioner, who again prescribed Ibuprofen (800 mg) on October 11, 2019. Plaintiff finally received it on October 15, 2019. *Id*. In his grievance filed one day earlier, Plaintiff requested the following relief: "the proper pain medication" to reduce his pain and suffering caused by his inadequate healthcare in the "North 2 Health Care Unit" and "the names of nurse that delivered medication to cells in the month of August & September so the nurses could be identified regarding the claim herein." *Id*. at 136-37.

Counselor Hood received Grievance #162-10-19 on October 17, 2019 and responded to it on February 25, 2020. *Id*. at 136. The response referenced an attached Memorandum signed by Dr. Siddiqui (facility medical director) and RN Angela Crain (HCUA) on February 19, 2020. *Id*. at 144. Siddiqui and Crain noted that Plaintiff was prescribed 90 tablets of Ibuprofen (600 mg) at Pinckneyville on June 20, 2019, and stated the pills should have been in his personal property when he transferred to Menard on July 11, 2019. *Id*. Plaintiff's medication records designated them as "Keep On Person." *Id*. According to the memo, Plaintiff was obligated to submit his own refill requests, and he became eligible to do so on July 14, 2019. The prison's pharmacy received no refill requests from him in July, August, or September 2019. *Id*. He was given a new order for ibuprofen (800 mg) on October 11, 2019 and received 30 tablets on October 15, 2019. *Id*. Defendants Siddiqui and Crain explained that Plaintiff was responsible for requesting medication refills 7 days before his supply ended and utilizing nurse sick call protocol. *Id*.

Menard's grievance office received this Memorandum response on March 18, 2020, and Grievance Officer Jeff Mulholland recommended that Plaintiff's grievance be found moot on March 20, 2020. *Id*. at 133-34. The Chief Administrative Officer concurred on March 24, 2020.

*Id*. Plaintiff signed his appeal on March 27, 2020. *Id*. at 134. Travis Bayler denied the appeal on behalf of the ARB on April 15, 2020, and Acting IDOC Director Rob Jeffreys concurred with the ARB's decision. *Id*. at 133. They noted Plaintiff "has access to medical care. Treatment is at the discretion of IDOC Physicians. Offender may submit a sick call for any issues that arise . . . [and] a written request for medication within seven days prior to supply ending." *Id*.

## **LEGAL STANDARDS**

Summary judgment is proper if the pleadings, affidavits, depositions, admissions, and answers to interrogatories show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). If a defendant meets his or her burden of showing that there is an absence of evidence to support the plaintiff's claim, Plaintiff must demonstrate by affidavit, depositions, admissions, and answers to interrogatories that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility.

When presented with a motion for summary judgment on the issue of exhaustion, the district court's approach to factual disputes is different. In *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), the Seventh Circuit instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. More recently, in *Perttu v. Richards*, 605 U.S. 460, 464 (2025), the Supreme Court partially overruled *Pavey* when it held that exhaustion disputes must be reserved for a jury if the contested facts on exhaustion are intertwined with facts

on the merits of a claim. Thus, the district court must consider whether intertwinement between factual disputes about exhaustion and the merits warrant a jury trial.[5]

If no material facts are disputed, no hearing is required. *See Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023)); *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only legal questions"). Because there are no genuine issues of material fact in dispute, no *Pavey* hearing is necessary to resolve the pending motions.

Under the PLRA, a prisoner may not bring a lawsuit concerning prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

The Illinois Administrative Code sets forth the grievance process that applies to an inmate in the custody of the Illinois Department of Corrections. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The regulations require the inmate to file his grievance with his counselor or Grievance

---

[5] The Supreme Court decided *Perttu* less than two weeks after all summary judgment briefing on exhaustion was complete, so the Court requested supplemental briefing to address the impact of *Perttu* on this matter. (Doc. 115). After reviewing Defendants' Supplemental Briefs (Docs. 116, 118) and Plaintiff's Responses (Docs. 120, 121), the Court finds no intertwinement between the merits of the claims and the facts underlying exhaustion. This case involves two Eighth Amendment deliberate indifference claims arising from allegedly unconstitutional living conditions and inadequate medical care. It involves no argument that Defendants' misconduct interfered with Plaintiff's exhaustion of those claims. The facts surrounding exhaustion are also undisputed. This case is thus distinguishable from *Perttu*, which included a First Amendment retaliation claim against a defendant who allegedly interfered with Plaintiff's ability to exhaust his administrative remedies for that claim.

Officer[6] within 60 days of the incident, occurrence, or problem giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through the counselor, the grievance must be submitted to a Grievance Officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) within 2 months after receipt of the grievance, whenever feasible. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he files an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the Grievance Officer's report and CAO's decision to his appeal. *Id.* The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months after receipt of the matter, when reasonably feasible under the circumstances. 20 ILL. ADMIN. CODE § 504.850(d), (e).

If he faces an emergency, an inmate can use an alternative procedure to file an emergency grievance. 20 ILL. ADMIN. CODE § 504.840. He may check the emergency grievance box on the form and submit it directly to the CAO. *Id.* If deemed an emergency due to a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is expedited for processing. *Id.* If the CAO determines that a grievance does not describe an emergency, the grievance is denied as a non-emergency, and the offender is notified, in writing, that he may resubmit the grievance in accordance with the standard grievance procedure. 20 ILL. ADMIN. CODE § 504.840(c) (effective April 1, 2017).

---

[6] Grievances about disciplinary matters should be addressed directly to the Grievance Officer, and all other grievances should be sent to the counselor first. *Id.*

## DISCUSSION

There is no dispute that Grievance #32-9-19 (dated August 26, 2019) and Grievance #162-10-19 (dated October 14, 2019) were properly filed at each level of the grievance process (Counselor, Grievance Officer, CAO, and ARB) "in the place, and at the time, the prison's administrative rules require." *See Pozo*, 286 F.3d at 1025; Doc. 106, ¶¶ 12, 14; Doc. 107. At issue is whether the grievances adequately apprised the prison of Plaintiff's complaints with respect to each defendant.

The Illinois Administrative Code requires a grievance to set forth factual details about each aspect of the offender's complaint. 20 ILL. ADMIN. CODE § 504.810(c). This includes a description of what happened, when it happened, where it occurred, and who is the subject or otherwise involved in the complaint. *Id*. The offender must include the name of each individual involved, if available, or as much descriptive information as possible for each individual involved, if a name is not available. *Id*.

### Count 1: Grievance #32-9-19

#### *Hood*

Grievance #32-9-19 clearly identifies Counselor Hood by name, date, and description. According to this grievance, Plaintiff first contacted Hood on July 15, 2019 and asked her for grievance forms to address his complaints about unconstitutional living conditions that other staff members had not addressed since his arrival on July 11, 2019. The same day, Plaintiff also requested Hood's help addressing the ongoing denial of a bedroll, hygiene supplies, and plumbing issues. (*See* Doc. 42, ¶ 36). Plaintiff indicates that Hood agreed to report the issues to a lieutenant, but he never heard from her about these issues again. Grievance #32-9-19 adequately describes

Hood's involvement in the ongoing unconstitutional living conditions addressed in Count 1. Therefore, Hood's request for summary judgment will be denied.

### *Evelsizer, Lindenberg, and Lawrence*

Grievance #32-9-19 identifies Lindenberg, Evelsizer, and Lawrence generically as the "Sargent or North 2 (Lindberg)," the "Major (John Doe)," and the "Warden." The parties do not argue these generic references are insufficient to identify them in connection with this grievance. *See* Doc. 107-1, p. 174; 20 ILL. ADMIN. CODE § 504.810(c). Rather, they take issue with the single passing reference to them in an otherwise lengthy grievance complaining about other staff members.

These defendants are mentioned only once in connection with a letter dated July 31, 2019 that was aimed at "making them aware of my problems within this grievance." Plaintiff does not describe the contents of this letter in his grievance. The grievance does not describe any misconduct by Evelsizer, Lawrence, and Lindenberg prior to or after the letter, and there is no indication in the record Plaintiff handed these defendants the letter or sent it to them some other way. He does not indicate whether they received it, when they received it, or how they responded.

Plaintiff's vague reference in the grievance to these three defendants in connection with a letter dated July 31, 2019[7] is insufficient to satisfy § 504.810(c) or PLRA's exhaustion requirement. Accordingly, Defendants Lindenberg, Evelsizer, and Lawrence are entitled to summary judgment on the issue of exhaustion, and their motion will be granted.

---

[7] Moreover, the letter post-dates resolution of some issues. The date on the letter is four days after Plaintiff admits receiving hygiene supplies on July 27, 2019 and four days before he admits receiving a bedroll on August 4, 2019.

**Count 2: Grievance #162-10-19**

*Dr. Siddiqui (Facility Medical Director)*

Dr. Siddiqui acknowledges that Plaintiff proceeded through each step of the grievance process for Grievance #162-10-19 filed in connection with Count 2, but argues that neither he nor any conduct attributable to him is referenced therein. (Doc. 106, ¶ 12). A grievant is not required to know the name of the prison employee he is targeting in the grievance. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014). When known, he should include "the name of each person who is the subject of or who is otherwise involved in the complaint," or, alternatively, when not known, he should include "as much descriptive information about the individual as possible." *Id*. (quoting § 504.810(b)).

Grievance #162-10-19 does not name Siddiqui, identify him generically as the "facility medical director," or describe any misconduct by him. Plaintiff's passing reference to having seen no doctor does not sufficiently describe this defendant who merely reviewed and responded to his grievance dated October 2019 in a memo issued in February 2020. Plaintiff's omission of all descriptive information about this individual or his role in this matter is a fatal defect. Consequently, Dr. Siddiqui's motion for summary judgment will be granted.

*Nurse Crain (Health Care Unit Administrator)*

When determining whether a general reference is sufficient to encompass a specific person, the Court is mindful of the PLRA's requirement that a grievance "alert the prison to the nature of the wrong for which redress is sought" and afford prison officials the opportunity to respond. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). *See also Pavey*, 663 F.3d at 905-06. The inmate must provide enough information to fulfill a grievance's function of giving prison officials a fair opportunity to address an inmate's

complaints, not provide a particular official with personal notice that he may be sued. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

Grievance #162-10-19, refers to Nurse Reba, Mary Zimmer, "Nurse Practitioner," "LPN Ms. T.," and other "nurses that delivered medication to cells in the month of August & September." (Doc. 107-1, pp. 136-37). Plaintiff fails to name Angela Crain specifically, generally, or generically. He offers no description by physical appearance, job title, job description, or otherwise. She is not implicated in any miscalculation of his pain, pain medication, or pain treatment. Plaintiff simply made no effort to identify Nurse Crain as the individual or part of any group of medical staff who denied him prescription pain medication between July and October 2019. All other facts suggest that her involvement was limited to the issuance of a memo summarizing Plaintiff's past care and issued four months after the events giving rise to Count 2 concluded. For these reasons, Crain's motion for summary judgment on Count 2 will be granted.

## DISPOSITION

The Amended Motion for Summary Judgment filed by Mohammed Siddiqui (Doc. 105) is **GRANTED**, and the Amended Motion for Summary Judgment filed by Defendants Angela Crain, Heather Hood, David Evelsizer, Frank Lawrence, and Donald Lindenberg (Doc. 107) is **GRANTED in part** as to Defendants Angela Crain, David Evelsizer, Frank Lawrence, and Donald Lindenberg and **DENIED in part** as to Defendant Heather Hood.

**COUNT 1** is **DISMISSED** against Defendants Evelsizer, Lawrence, and Lindenberg, and **COUNT 2** is **DISMISSED** against Defendants Crain and Siddiqui, both based on Plaintiff's failure to exhaust his administrative remedies. Because no other claims remain pending against them, Defendants Evelsizer, Lawrence, Lindenberg, Crain, and Siddiqui are **DISMISSED** from this action with judgment to enter at the close of this case.

All other defendants withdrew or waived the affirmative defense based on Plaintiff's failure to exhaust his administrative remedies.

Now that the issue of exhaustion is resolved, the following claims will proceed to the merits: **COUNT 1** against Defendants **Brown, Hood, Marnarti,** and **Brandt** and **COUNT 2** against Defendant **Zimmer**. In addition, Defendant **Anthony Wills** remains named in an official capacity for purposes of carrying out any injunctive relief ordered in this case.

The Court will enter a separate Scheduling and Discovery Order lifting the stay on discovery and providing further instructions and deadlines for litigation of the remaining claims.

**The Clerk's Office is DIRECTED to UPDATE the docket sheet in CM/ECF to reflect the correct spelling of each defendant's name as reflected in the above case caption and Footnote 1 and TERMINATE Defendants Evelsizer, Lawrence, Lindenberg, Crain, and Siddiqui as parties in CM/ECF.**

**IT IS SO ORDERED.**

DATED: February 2, 2026               *s/ Staci M. Yandle*
                                       **STACI M. YANDLE**
                                       **Chief U.S. District Judge**